## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| JENNIFER GOLDSTEIN and KEVIN O'MALLEY, | Case No.: |
| Plaintiffs, | COMPLAINT |
| v. | DEMAND FOR JURY TRIAL |
| BGC HOLDINGS, L.P., BGC GP, LLC, BGC FINANCIAL, L.P. and BGC PARNTERS, Inc., | |
| Defendants. | |

Plaintiffs Jennifer Goldstein ("Goldstein") and Kevin O'Malley ("O'Malley" and together with Goldstein, the "Plaintiffs"), by and through their undersigned counsel, bring this action against BGC Holdings, L.P. ("BGC Holdings"), BGC GP, LLC ("BGC GP"), BGC Financial, L.P. ("BGC Financial") and BGC Partners, Inc. ("BGC Partners" and together with BGC Holdings, BGC GP, and BGC Financial the "Defendants") and allege as follows:

### NATURE OF THE ACTION

1.      This is an action to recover damages arising from the wrongful refusal to redeem limited partnership interests (as defined more particularly herein, the "Partnership Units") in Defendant BGC Holdings, a Delaware limited partnership that is an affiliate and indirect owner of BGC Financial, Plaintiffs' former employer. Plaintiffs became vested in their Partnership Units through their participation in a deferred compensation program and their vested Partnership Units represent a substantial portion of the compensation they earned during their employment with BGC Financial.

2.      During their employment, Plaintiffs engaged in protected activity under, *inter alia*, Title VII of the Civil Rights Act of 1964, by reporting sexual harassment, discrimination, retaliation, a hostile work environment and opposing pressure on them to participate in those unlawful activities. BGC Financial retaliated against Plaintiffs by, *inter alia*, wrongfully terminating both their employment and, on information and belief, their status as limited partners of BGC Holdings. Upon their termination, Defendants were, pursuant to Sections 12.02(a)(ii) and 12.02(j)(i) of the Partnership Agreement, obligated to redeem Plaintiffs' Partnership Units. Defendants, acting in bad faith, wrongfully refused to effectuate these redemptions. Defendants, also acting in bad faith, wrongfully refused to effectuate the redemption of Plaintiffs' Partnership Units.  Claimants also submitted a complaint with the EEOC against BGC Holdings and BGC Financial for, *inter alia*, failure to redeem the Partnership Units.

3.      In March 2019, a FINRA arbitration panel found BGC Financial liable to Plaintiffs for violations of Title VII of the Civil Rights Act of 1964 and awarded them damages, but otherwise found that it lacked jurisdiction to award relief against BGC Holdings with respect to its failure to redeem Plaintiffs' Partnership Units. Accordingly, Plaintiffs demanded in writing that BGC Holdings comply with its redemption obligations under the Partnership Agreement. Acting in bad faith, BGC Holdings wrongfully refused to comply with its obligations to redeem the Partnership Units.

4.      BGC Holdings' refusal to redeem the Partnership Units constitutes a breach of its obligations under the Partnership Agreement and also a further act of unlawful retaliation against Plaintiffs' for engaging in protected activities. BGC Partners is liable for retaliation because the other Defendants acted as alter egos and/or mere instrumentalities with respect to the wrongful conduct alleged herein.

5.      Plaintiffs received "right-to-sue" letters from the EEOC on August 27, 2020 and now bring this action to recover damages for the wrongful breach of Defendants' obligations under the Partnership Agreement and retaliation under Title VII.

## PARTIES

6.      Plaintiff Jennifer Goldstein is an individual who resides in Denver, Colorado.

7.      Plaintiff Kevin O'Malley is an individual who resides in Austin, Texas.

8.      Upon information and belief, Defendant BGC Holdings is a limited partnership organized and existing under the under the laws of the State of Delaware.  BGC Holdings' principal offices are located at 499 Park Avenue, New York, New York 10022.

9.      Upon information and belief, Defendant BGC GP is a limited liability company organized and existing under the laws of the State of Delaware. BGC GP's principal offices are located at 499 Park Avenue, New York, New York 10022. BGC GP is the general partner of BGC Holdings.

10.      Upon information and belief, BGC Financial is a limited partnership organized and existing under the laws of the State of Delaware. BGC Financials' principal offices are located at 499 Park Avenue, New York, New York 10022.

11.      Upon information and belief, BGC Partners is a corporation formed under the laws of the State of Delaware. BGC Partners' principal offices are located at 499 Park Avenue, New York, New York 10022. BGC Partners is the direct or indirect owner of BGC Holdings, BGC GP and BGC Financial.

## JURISDICTION AND VENUE

12.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action involves one or more claims arising under the Constitution, laws, or treaties of the United States.

13.   This Court has supplemental jurisdiction over the state law claims asserted in this action pursuant to 28 U.S.C. § 1367(a).

14.   This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum of $75,000 and is between citizens of different states.

15.   Venue is proper in this district in accordance with 28 U.S.C.§ 1391(b)(2) because Defendants are Delaware entities.

## FACTS

### Introduction

16.   Plaintiffs are former employees of BGC Financial, a broker and financial technology company. Plaintiffs were employed by BGC Financial as Co-Managers of the ABS Group within the mortgage backed securities department. As brokers on the ABS desk, Plaintiffs served as intermediaries to BGC Financial's clients, including banks and other financial institutions.

17.   Plaintiffs executed their employment agreements with BGC Financial on or about April 8, 2010. The Employment Agreements provided for five year terms.

18.   Pursuant to their employment agreements, Plaintiffs were paid annual salaries as well as commissions on trades brokered from BGC Financial, less expenses. Plaintiffs' total compensation consisted primarily of commissions.

### The Partnership Units

19.   In recognition of the contributions Plaintiffs were expected to make to BGC Financial, BGC Financial caused Plaintiffs to be enrolled in a deferred compensation program, which permitted Plaintiffs to become limited partners of BGC Holdings and to defer a portion of their compensation in exchange for certain Partnership Units representing limited partnership

interests in BGC Holdings. Subject to the terms of the Partnership Agreement, Plaintiffs could be permitted to convert portions of their Partnership Units into common stock of BGC Partners, a public company whose shares are listed on NASDAQ.

20.     At all relevant times, the foregoing deferred compensation plan was controlled and managed by the compensation committee of the board of directors of BGC Partners.

21.     In connection with Plaintiffs' acceptance of their employment with BGC Financial, and enrollment in the deferred compensation program administered and controlled by BGC Partners, BGC Holdings accepted Plaintiffs as limited partners and granted to them an initial allotment of Partnership Units (the "Sign-on Partnership Units").

22.     Plaintiffs' rights respecting the Sign-on Partnership Units vested on a quarterly basis and were otherwise governed by the terms of the Partnership Agreement. The Sign-on Partnership Units had a "Post-Termination Amount" value which would, pursuant to Section 12.02(j) the Partnership Agreement, be paid to Plaintiffs in redemption of their units following their termination as limited partners.

23.     As BGC Holdings stated in a letter to O'Malley dated April 8, 2010, the Sign-on Partnership Units granted to Mr. O'Malley upon commencement of his had a Post-Termination Amount of $350,000:

> In recognition of the contributions you are expected to make to BGC Financial, L.P. (the "Company"), you will be eligible to receive a grant of equity interests in [Defendant] (which, for purposes of this letter, shall be referred to as "Partnership Units"). . . .

> The Partnership Units you will be eligible to receive will have a Post-Termination Amount of $350,000 and will vest rateably on the first, second, and third anniversaries of the effective date of the grant. . . .

> The Partnership Units would be subject to the terms and conditions of the [Partnership Agreement]. . . .

24.     BGC Holdings issued to Goldstein an identical letter, but granting to her Sign-on Partnership Units with a Post-Termination Amount of $150,000.

25.     Plaintiffs enrolled into the deferred compensation program and deferred approximately 10% of their compensation in exchange for equity interests in BGC Holdings.

26.     In and around 2011, Defendants offered Plaintiffs the opportunity to participate in the deferred compensation plan by way of a different class of Partnership Units (the "Newton Partnership Units").

27.     The Newton Partnership Units differed from the Sign-on Partnership Units in that they lacked a Post-Termination Amount. Instead, upon termination, BGC Holdings was obligated, pursuant to Section 12.02(a)(ii) of the Partnership Agreement, to redeem the Newton Partnership Units by either converting them into shares of common stock of BGC Partners or paying a "Base Amount" representing the value of the Newton Partnership Units that were not convertible into shares of common stock of BGC Partners.

28.     During the course of their employment, Plaintiffs generated substantial commission and other production, resulting in substantial compensation under their respective agreements. As a result of the deferral of some of this compensation as described above, Plaintiffs' were granted and became vested in both Sign-on Partnership Units and Newton Partnership Units (together, the "Partnership Units") having substantial Post-Termination Amount and Base Amount values, respectively.

29.     Pursuant to the terms of the Partnership Agreement, Defendants could from time-to-time permit Plaintiffs to convert a portion of their Partnership Units into common stock of BGC Partners. On certain occasions during their employment, Plaintiffs requested, and were granted the

right, to convert small portions of their Newton Partnership Units into common stock of BGC Partners. On information and belief, none of Plaintiffs' Sign-on Partnership Units were converted.

30.     Notwithstanding the conversions of small portions of their Partnership Units, during the course of their employment Plaintiffs retained vested interests in Partnership Units having Post-Termination Amount and Base Amount values.

<u>Plaintiffs Suffered Unlawful and Pervasive Harassment,
Discrimination, and a Hostile Work Environment</u>

31.     During the course of Ms. Goldstein's employment with BGC Financial, she was subjected to repeated acts of discrimination and harassment, including physical groping by BGC Financial's clients. As co-manager, Mr. O'Malley was forced to witness the sexual harassment perpetrated against his wife and suffered retaliation as a result thereof. Ms. Goldstein and Mr. O'Malley were subjected to ongoing harassment and discrimination that culminated in an extremely hostile work environment.

32.     For example, Kevin McNulty, the head broker on the Credit Derivatives desk, had originally interviewed Goldstein and O'Malley for their respective positions at BGC Financial. After Plaintiffs commenced employment, however, McNulty made numerous sexually explicit comments to Ms. Goldstein and commented to others that Ms. Goldstein could be "bought," or words to that effect. He also once commented to Ms. Goldstein, "If my wife looked like you, I would not have the urges I do with other girls." McNulty asked Ms. Goldstein to "spin in [her] dress" and informed her that "guys are losing their shit over you."

33.     Lou Scotto, Chief Executive Officer at BGC Financial and General Manager at BGC Partners, remarked that Ms. Goldstein's success in her position had to be the result of Ms. Goldstein "fucking" clients. Scotto also made general comments that any successful female broker, including Ms. Goldstein, "must be sucking good dick."

34. Ms. Goldstein also suffered harassment from clients of BGC Financial. However, Scotto's idea to resolve such harassment was to tell Mr. O'Malley that he was a "fucking pussy for not kicking the mother fucker's ass."

35. Additionally, Ms. Goldstein and Mr. O'Malley were subjected to pornography being displayed on employees' computer screens as well as conversations between other brokers of a sexually explicit nature. Ms. Goldstein, while at work, was exposed to male brokers viewing pornographic images on a computer and discussing the size of the woman's vagina.

36. Plaintiffs also complained to management that some brokers at BGC Financial had attained business by spending more money on clients in violation of SEC rules and providing clients with access to drugs and prostitutes; they also complained that certain managers and supervisors at BGC Financial encouraged this conduct as well as improper spending of funds to provide clients with access to drugs and prostitutes, all for the purpose of generating higher sales production.

37. The foregoing conduct presented substantial risks to BGC Financial and the Defendants of sanctions, penalties, or other regulatory action by the SEC, FINRA, or other regulatory or self-regulatory bodies. Supervisors and corporate officers of BGC Financial and the Defendants encouraged Plaintiffs eventually refused to engage in similar wrongful conduct and opposed same.

38. Plaintiffs in good faith notified management at Defendants of the foregoing conduct.

39. BGC Financial and the other Defendants refused to take corrective action and, instead, wrongfully retaliated against Plaintiffs.

40.     In accordance with their employment agreements and applicable FINRA rules, Plaintiffs commenced, on January 16, 2015, an arbitration against BGC Financial before the FINRA Office of Dispute Resolution. In their Statement of Claim, Plaintiffs asserted claims against BGC Financial for, *inter alia*, sexual harassment, discrimination, hostile work environment and retaliation for Plaintiffs' protected activities.

Defendants Refused in Bad Faith
to Redeem Plaintiffs' Partnership Units

41.     Ultimately, BGC Financial and the other Defendants retaliated by terminating Plaintiffs' employment in or around June 2015. Upon information and belief, Plaintiffs' termination ultimately effected a termination of their status as limited partners of BGC Holdings.

42.     Pursuant to Section 12.02(j)(i) of the Partnership Agreement, upon the termination of Plaintiffs as limited partners BGC Holdings was obligated to "redeem" all of their Sign-on Partnership Units by paying to Plaintiffs the Post-Termination Amounts for those units in which Plaintiffs were vested (such payments referred to as the "Post-Termination Payments"). Pursuant to Section 12.02(j)(ii), the Post-Termination Payments were required to be made in four annual installments starting at the first anniversary after the termination date and annually thereafter. Alternatively, Defendants had the discretion under Section 12.02(j)(i) to convert some or all of the Sign-on Partnership Units into shares of common stock of BGC Partners.

43.     Pursuant to Section 12.02(a)(ii) of the Partnership Agreement, upon termination, BGC Holdings was obligated to "redeem" all of Plaintiffs' Newton Partnership Units by converting that portion of the units that had become exchangeable into shares of BGC Partners and paying to Plaintiffs a Base Amount value for the non-exchangeable units.

44.    At or around the time of their termination, Plaintiffs spoke to Dyanne Rosado (Deputy Director of Human Resources of BGC Partners) regarding the redemption of their Partnership Units.

45.    Ms. Rosado specifically told Plaintiffs that Defendants would exercise their discretion to permit Plaintiffs to convert their Partnership Units into common stock of BGC Partners on the following schedule: 25% within 15 months after termination, and 25% on each anniversary of the first conversion over a three-year period.

46.    In good faith reliance upon Ms. Rosado's representations, Plaintiffs made their first conversion request in 2016. In response, Michael Popok (Managing Director and Deputy General Counsel of BGC Partners) refused to permit the conversion and failed to effectuate the redemptions required under the Partnership Agreement. The only reason provided for refusing redemption was the fact that Plaintiffs engaged in protected activities.

47.    Defendants could not in good faith refuse Plaintiff's request based on the protected activities engaged in by Plaintiffs, *i.e.*, the reporting and submissions of complaints regarding the unlawful sexual harassment, discrimination, retaliation, and hostile work environment, or Plaintiffs' opposition to the unlawful activities to which they were exposed. To be sure, Defendants otherwise lacked any good faith basis to refuse to redeem Plaintiffs' Partnership Units as required under the Partnership Agreement.

48.    Accordingly, Plaintiffs raised in the arbitration proceeding additional claims seeking an order directing BGC Holdings to redeem their Partnership Units. The submission of claims to FINRA arbitration also qualified as a protected activity as does all activities associated with the prosecution of the FINRA action.

49.     During the arbitration hearing, Ms. Rosado testified that she had previously advised Plaintiffs of Defendants' decision to permit them to convert their Partnership Units into stock (as alleged above in paragraph 48).

50.     Ms. Rosado further testified, in sum or substance, that Defendants' ordinary practice with regard to the redemption of Partnership Units was to present to the terminated limited partner a form separation agreement addressing certain limited and narrow conditions to the conversions and payments set forth in Sections 12.02(a)(ii) and/or 12.02(j)(i) of the Partnership Agreement. Upon execution of the form documents, the regular practice was to redeem the Partnership Units as provided in Sections 12.02(a)(ii) [i.e. by automatically converting in stock or otherwise making payments as provided therein] and/or 12.02(j)(i) [i.e. by making the Post-Termination Payments or conversion into stock as provided therein].

51.     Rosado further testified, in sum or substance, that she did not know and could think of no reason why BGC Holdings had not presented a form separation agreement to Plaintiffs, in accordance with standard practice and procedure, or why BGC Holdings was refusing to redeem Plaintiffs' Partnership Units as required under relevant sections of the Partnership Agreement.

52.     Defendants' refusal to proceed with redemption of Plaintiffs' Partnership Units as required under the relevant sections of the Partnership Agreement was made in bad faith for the purposes of (i) intimidating Plaintiffs from exercising in good faith their legal rights under the law, and (ii) to pressure Plaintiffs to withdraw their meritorious claims or otherwise settling the claims for a reduced value. As Mr. Popok stated when he refused to process redemption of the Partnership Units: "You sued the company for 30 million dollars.  That's not what partners do."

53.     Defendants did not dispute Rosado's testimony at the arbitration. Instead, Defendants argued that Plaintiffs' claims for the value of their Partnership Units were not within

the jurisdiction of FINRA arbitration. The dispute over the Partnership Units was then submitted to the arbitration panel.

54.     In an award dated March 9, 2019 (the "FINRA Award"), the FINRA arbitration panel awarded relief in favor of Plaintiffs on their claims against BGC Financial, finding BGC Financial liable to Goldstein for money damages on her claims of hostile work environment and retaliation and liable to O'Malley on his claim of retaliation. The damages awarded by the arbitration panel amounted to $1,258,952.50 including counsel fees.

55.     The arbitration panel otherwise declined, for jurisdictional reasons, to grant any relief against BGC Holdings in connection with Plaintiffs' Partnership Unit redemption claims. The panel ruled that "BGC Holdings, L.P. . . . [is] an entity that . . . is not a FINRA registered entity that was subject to jurisdiction in this arbitration. Accordingly, the Panel has made no decision regarding deferred compensation claims against BGC Holdings, L.P."

<u>Defendants Have Continued to Wrongfully<br>Refuse to Redeem Plaintiffs' Partnership Units</u>

56.     Because the arbitrators found BGC Financial liable on Plaintiffs' claims, and BGC Financial failed to seek an order vacating the FINRA Award, the issuance of the FINRA Award constitutes that last occurrence that could have been relied on in good faith by Defendants as a condition to redeem Plaintiffs' Partnership Units. Accordingly, following issuance of the FINRA Award, Plaintiffs again made written demands for the redemption of their Partnership Units pursuant to the Partnership Agreement.

57.     Defendants failed to even respond to Plaintiffs' written requests for presentation of form separation agreements and redemption of their Partnership Units.

58.     On or about October 15, 2019, Plaintiffs each filed separate Complaints against BG Holdings and BGC Financial at the New York State Division of Human Rights ("NYSDHR"),

alleging in sum and substance that Defendants had retaliated against Plaintiffs by failing to redeem the value of their Partnership Units.  Such complaints were timely cross-filed with the EEOC.

59.     Defendants' have in bad faith refused to make payments to Plaintiffs that Defendant is required to make under the Partnership Agreement. As of the date of this pleading, Defendants have failed to provide to Plaintiffs any notices, as required under the Partnership Agreement, concerning the effective date or any other matters concerning the redemption of Plaintiffs' Partnership Units.

60.     Defendants' failure to respond to Plaintiffs' written demands made after the issuance of the FINRA Award constitutes further unlawful retaliation for Plaintiffs' protected activities.

61.     Despite good faith efforts to resolve this claim outside of court, Defendants have continued to wrongfully and in bad faith fail to redeem Plaintiffs' Partnership Units as required under the Partnership Agreement.

62.     The wrongful and bad faith denial of Plaintiffs' request to convert their Partnership Units into shares of stock in BGC Partners deprived them of (i) a substantial portion of the compensation they had earned during their employment; and (ii) the opportunity to sell that stock at favorable prices substantially more favorable than the price of the stock as of the date of this pleading.

63.     Plaintiffs now bring this action to recover the deferred equity compensation that Defendants have wrongfully withheld.

64.     On information and belief, none of the claims alleged here are subject to an agreement to arbitrate.

## COUNT I

*Declaratory Judgment that Plaintiffs are Entitled to*
*Redemption in Accordance With the Terms of*
*the Partnership Agreement*

65.     Plaintiffs repeat and reallege the allegations in each of the foregoing paragraphs as if fully set forth herein.

66.     The Partnership Agreement is governed by Delaware law.

67.     From in or around April 2010 through in or around June 2015, Plaintiffs were limited partners of BGC Holdings.

68.     Plaintiffs were awarded Partnership Units representing equity interests in BGC Holdings and having Post-Termination Amounts of substantial value.

69.     Plaintiffs became vested in a substantial portion of the foregoing Partnership Units.

70.     On information and belief, sometime after June 2015, Plaintiffs were terminated as limited partners of BGC Holdings.

71.     Pursuant to Section 12.02(j)(i) of the Partnership, BGC Holdings was obligated to redeem the Sign-on Partnership Units for that portion of the Post-Termination Amounts in which Plaintiffs were vested.

72.     Pursuant to Section 12.02(j)(ii), BGC Holdings was required to pay the Post-Termination Payments.

73.     Pursuant to Section 12.02(a)(ii), BGC Holdings was required to redeem the Newton Partnership Units for shares of BGC Partners or payment of the Base Amounts.

74.     Plaintiffs have not engaged in any Competitive activities or otherwise breached any of the partner obligations under the Partnership Agreement. There exists no good faith basis on which Defendants may permissibly refuse to redeem Plaintiffs' Partnership Units as provided in the Partnership Agreement.

75. Defendants acted in bad faith by denying Plaintiffs' demands for redemption of their Sign-on Partnership Units.

76. Defendants have no good faith basis to deny Plaintiffs' demands for Post-Termination Payments and Base Amount payments in redemption of their Partnership Units.

77. All conditions to redemption, if any, are now satisfied.

78. As such, there is an actual and present controversy between Plaintiffs and Defendants concerning BGC Holdings wrongful denial of redemption as provided in the Partnership Agreement.

79. A judicial determination of this issue is necessary and appropriate now.

80. Plaintiffs seek a judgment declaring that Plaintiffs are entitled, under Section 12.02 of the Partnership Agreement, to redemption of their Partnership Units.

## COUNT II

### *Injunctive Relief*

81. Plaintiffs repeat and reallege the allegations in each of the foregoing paragraphs as if fully set forth herein.

82. It is Defendants' ordinary practice to satisfy the conditions set forth in Sections 12.02(a)(ii) and (j)(ii) of the Partnership Agreement by presenting to a terminated limited partner a form separation agreement and/or other form documents.

83. At all relevant times, Plaintiffs complied in good faith with their obligations under the Partnership Agreement.

84. All conditions to redemption, if any, are now satisfied.

85. Defendants have wrongfully failed to present to Plaintiffs the form separation agreement and/or other form documents necessary to effectuate redemption.

86.     Plaintiffs will suffer irreparable harm unless this Court grants the injunctive relief that Plaintiffs seek.

87.     Plaintiffs have no adequate remedy at law.

88.     Defendants will suffer no irreparable harm in the event the court issues an injunction.

89.     The balance of the equities weighs in favor of an injunction.

90.     Plaintiffs seek an injunction permanently enjoining and restraining Defendants from failing to present to Plaintiffs the form separation agreement and/or other form documents ordinarily used by Defendants in connection with the effectuation of redemption of their Partnership Units.

### COUNT III

*Breach of Contract*
*as Against BGC Holdings*

91.     Plaintiffs repeat and reallege the allegations in each of the foregoing paragraphs as if fully set forth herein.

92.     Plaintiffs were limited partners of BGC Holdings in accordance with the terms of the Partnership Agreement.

93.     The Partnership Agreement constitutes a contract enforceable against BGC Holdings.

94.     Pursuant to Section 12.02(j)(i) of the Partnership Agreement, following the termination of Plaintiffs as limited partners, BGC Holdings was obligated to "redeem" all of the Partnership Units awarded by paying to Plaintiffs the Post-Termination Amounts in which Plaintiffs were vested (such payments referred to the "Post-Termination Payments").

95.     Pursuant to Section 12.02(j)(ii), the Post-Termination Payments were required to be made in four installments.

96.     In the alternative, Defendants had discretion, as provided in Section 12.02(j)(i) of the Partnership Agreement to permit Plaintiffs to convert some or all of their Partnership Units into common stock of BGC Partners.

97.     Pursuant to Section 12.02(a)(ii) of the Partnership Agreement, BGC Holdings was required to redeem the Newton Partnership Units for shares of BGC Partners or payment of the Base Amounts.

98.     At all relevant times, Plaintiffs complied in good faith with their obligations under the Partnership Agreement.

99.     All conditions to redemption, if any, have been satisfied.

100.    BGC Holdings breached its obligation to redeem the Partnership Units as required under the Partnership Agreement

101.    At or around the time of their termination, Defendants entered into an oral agreement with Plaintiffs to convert 25% of their Partnership Units into common stock within 15 months and conversions of the remaining Partnership Units in 25% portions each year thereafter.

102.    The foregoing oral agreement constitutes a contract for the purchase or sale of securities that is not subject to the statute of frauds. *See* 6 Del. C. § 8-113.

103.    BGC Holdings breached its oral agreement to convert Plaintiffs' Partnership Units into stock.

104.    As a result of the foregoing breaches by BGC Holdings, Plaintiffs have suffered damages in an amount to be determined at trial but expected to be in excess of $500,000.

17

## COUNT IV

*Breach of Covenant of Good Faith and Fair Dealing*
*as Against BGC Holdings*

105.    Plaintiffs repeat and reallege the allegations in each of the foregoing paragraphs as if fully set forth herein.

106.    Plaintiffs were limited partners of BGC Holdings in accordance with the terms of the Partnership Agreement.

107.    The Partnership Agreement constitutes a contract enforceable against BGC Holdings.

108.    Implied in the Partnership Agreement is a covenant of good faith and fair dealing that is enforceable against BGC Holdings.

109.    Pursuant to Sections 12.02(a)(ii) and 12.02(j)(ii) of the Partnership Agreement, BGC Holdings was entitled to condition redemption of the Partnership Units upon the certification by Plaintiffs that they have not engaged in any Competitive Activity.

110.    At all relevant times, Plaintiffs complied in good faith with their obligations under the Partnership Agreement and refrained from any Competitive Activity. There exists no good faith basis on which Defendants could avoid their obligations to redeem Plaintiffs' Partnership Units in accordance with the terms of the Partnership Agreement.

111.    In was the ordinary practice of Defendants to document the satisfaction of the foregoing conditions by presenting to a terminated limited partner a form separation agreement and/or other form documents for review and execution.

112.    All conditions to redemption, if any, are now satisfied.

113.    In breach of the implied covenant of good faith and fair dealing, BGC Holdings wrongfully and in bad faith withheld from and refused to present to Plaintiffs a form separation

agreement and/or other form documents ordinarily presented to terminated limited partners in connection with the redemption of Partnership Units.

114.     Defendants' continued withholding of such form documents constitutes a breach of the covenant of good faith and fair dealing.

115.     On information and belief, BGC Holdings continues to withhold and refuse to present these form documents in bad faith.

116.     As a result of Defendants' breaches of the covenant of good faith and fair dealing, Plaintiffs have suffered damages in an amount to be determined at trial but believed to exceed $500,000.

## COUNT V

*Breach of Fiduciary Duty*
*as Against BGC GP, LLC*

117.     Plaintiffs repeat and reallege the allegations in each of the foregoing paragraphs as if fully set forth herein.

118.     At all relevant times, BGC GP acted in the capacity as the general partner of BGC Holdings. As such, BGC GP owed to Plaintiffs a fiduciary duty, including the fiduciary duty of loyalty.

119.     At all relevant times, Plaintiffs were limited partners of BGC Holdings.

120.     During the relevant time period, BGC GP breached its fiduciary duties to Plaintiffs by, *inter alia*, failing in bad faith to effectuate the redemption of Plaintiffs' Partnership Units.

121.     The foregoing breaches of fiduciary duty by BGC GP have caused damage to Plaintiffs.

**COUNT VI**

*Retaliation Under Title VII, 42 U.S.C. § 2000e-3*
*as Against BGC Financial, BGC Holdings and BGC Partners*

122.    Plaintiffs repeat and reallege the allegations in each of the foregoing paragraphs as if fully set forth herein.

123.    BGC Financial qualifies as an employer as that term is used in 42 U.S.C. § 2000e-3.

124.    Upon information and belief, BGC Financial is an alter ego and/or mere instrumentality of BGC Partners and BGC Holdings because (i) each of these qualify as affiliates of each other, as that term is defined 17 CFR § 230.405 , and as affiliates share an interrelationship of operations; (ii) are under common management by BGC Partners; (iii) are under common ownership and/or financial control of BGC Partners; and (iv) are under centralized control of BGC Partners.  Accordingly, BGC Partners and BGC Financial may be held liable for the retaliatory conduct alleged herein.

125.    All conditions to redemption of Plaintiffs' Partnership Units, if any, have been satisfied. Nonetheless, Defendants have refused and failed to redeem the Partnership Units as required under the Partnership Agreement.

126.    On information and belief, Defendants have wrongfully interfered with the redemption of Plaintiffs' Partnership Units.

127.    Defendants' interference with the redemption of Plaintiffs' Partnership Units as provided in the Partnership Agreement has been undertaken in retaliation for Plaintiffs' protected activities.

128.    Upon information and belief, Plaintiffs' have satisfied all jurisdictional prerequisites to bringing this cause of action because they filed complaints against BGC Holdings

with the New York State Division of Human Rights, which was timely cross-filed at the Equal Employment Opportunity Commission on October 15, 2019. Plaintiffs received right to sue letters on August 27, 2020.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs hereby request the entry of judgment in their favor and against Defendants as follows:

1.      An order declaring that Plaintiffs are entitled, pursuant to the Partnership Agreement, to Post-Termination Payments in connection with the Partnership Units in which they were vested at the time of their termination;

2.      An order permanently enjoining and restraining Defendants from withholding form separation agreements or any other form documents ordinarily presented to terminated limited partners in connection with the redemption of Partnership Units;

3.      Awarding to Plaintiffs money damages for Defendants' breach of its obligation under Section 12.02 of the Partnership Agreement to redeem the Partnership Units in an amount to be determined at trial, but believed to exceed $500,000;

4.      Awarding to Plaintiffs money damages for Defendants' continued breaches of the covenant of good faith and fair dealing in an amount to be determined at trial, but believed to exceed $500,000;

5.      Awarding to Plaintiffs money damages for BGC GP's breach of its fiduciary duties in an amount to be determined at trial, but believed to exceed $700,000;

6.      Awarding to Plaintiffs money damages for Defendants' unlawful retaliation against Plaintiffs in an amount to be determined at trial, but believed to exceed $500,000;

7.      Pre- and post-judgment interest, to the fullest extent assessable at law or in equity, on all damages; and

8.      An award of all reasonable costs, disbursements, and attorneys' fees incurred in connection with this action, as provided by Delaware law.

Dated:  September 4, 2020                    CKR LAW LLP

                                            By: /s/ William R. Firth, III
                                            William R. Firth III (No. 4356)
                                            1000 N. West Street, Suite 1200
                                            Wilmington, DE 19801
                                            Tel. (302) 367-7903
                                            wfirth@ckrlaw.com

                                            and

                                            Michael James Maloney
                                            *(admission pro hac vice expected)*
                                            FELICELLO LAW P.C.
                                            1140 Avenue of the Americas
                                            9th Floor
                                            New York, New York 10036
                                            Tel. (646) 564-3510
                                            mmaloney@felicellolaw.com

                                            *Attorneys for Plaintiffs Jennifer Goldstein and Kevin O'Malley*