IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JENNIFER GOLDSTEIN, et al., | : |
| Plaintiffs, | : |
| v. | : Civil Action No. 20-1193-RGA |
| BGC HOLDINGS, L.P., et al., | : |
| Defendants. | : |

**MEMORANDUM ORDER**

Defendants, four related parties, have filed a motion to dismiss (D.I. 9) each count of the six-count Complaint.

Plaintiffs are Jennifer Goldstein and Kevin O'Malley, both of whom were employed by one of Defendants—BGC Financial, L.P.—from 2010 to June 2015, originally hired as "Co-Managers of the ABS Group within the mortgage backed securities department." (D.I. 1, ¶ 16). The Complaint paints a picture of abusive and unlawful working conditions. (*Id.* at 7-8). Plaintiffs began FINRA arbitration proceedings against BGC Financial on January 16, 2015. (*Id.* ¶ 40). Plaintiffs were subsequently terminated from their employment around June 2015. (*Id.* ¶ 41). Plaintiffs then raised additional claims in the arbitration. Plaintiffs won an award of about $1,250,000 in the arbitration.[1]

---

[1] Defendants represent that they have paid the award. (D.I. 15 at 7).

1

Besides for BGC Financial, the other defendants are BGC Holdings, L.P., BGC GP, LLC, and BGC Partners, Inc. The four defendants are formed under Delaware law and have principal places of business in New York.

The gist of the present Complaint is Plaintiffs' claim that they were enrolled in a deferred compensation program that permitted Plaintiffs to become limited partners in BGC Holdings and that they earned and have vested rights in two classes of partnership units, which they call "Sign-on Partnership" Units and "Newton Partnership" Units. (D.I. 1 at 4-7). Plaintiffs would have an option to convert these partnership units into common stock of BGC Partners. (*Id.* at 4-5). Plaintiffs made a "conversion request" in 2016, but BGC Partners refused the request about October 27, 2016, because Plaintiffs had "engaged in protected activities." (D.I. 1, ¶46; *see* D.I. 11-1, Ex. B).

Plaintiffs seek damages arising from the refusal to redeem limited partnership interests in BGC Holdings. (D.I. 1, ¶ 1).

On March 9, 2019, the arbitration panel found in favor of Plaintiffs with regards to the claims of hostile work environment and retaliation but declined to exercise jurisdiction over BGC Holdings, finding that it was not a FINRA registered entity. (*Id.* ¶¶ 54-55). Thus, the arbitration panel did not decide the deferred compensation claim. (*Id.* ¶ 48; *see* D.I. 11-1, Ex. C, at 2 of 6 ("the Panel has made no decision regarding deferred compensation claims against BGC Holdings.")).

Plaintiffs maintain that the issuance of the arbitration award is the "last occurrence that could have been relied upon in good faith by Defendants as a condition to redeem Plaintiffs' Partnership Units." (*Id.* ¶ 56). Following the arbitration award, Plaintiffs each made a written

2

demand for the redemption of the partnership units, but Defendants did not respond to the demands. (*Id.* ¶¶ 56-57).

On September 4, 2020, Plaintiffs filed this lawsuit. Plaintiffs assert five state law claims and one federal claim for Title VII retaliation. On the basis of the Title VII claim, Plaintiffs allege federal question jurisdiction. (D.I. 1 ¶ 12). All the state law claims relate to breach of the partnership agreement, including a request for declaratory relief, an injunction, two breach of contract claims, and breach of fiduciary duty claim. Plaintiffs allege supplemental jurisdiction over the state law claims, and further allege that there is diversity of citizenship jurisdiction.

The Title VII retaliation is alleged against Plaintiffs' former employer, BGC Financial, and also against BGC Holdings and BGC Partners. Plaintiffs state that BGC Financial is an alter ego and/or mere instrumentality of BGC Partners and BGC Holdings because (i) each of these qualify as affiliates of each other, as that term is defined in 17 CFR § 230.405, and as affiliates share an interrelationship of operations; (ii) are under common management by BGC Partners; (iii) are under common ownership and/or financial control of BGC Partners; and (iv) are under centralized control of BGC Partners. (D.I. 1, ¶ 124). Thus, Plaintiffs state that BGC Partners and BGC Financial may be held liable for the retaliatory conduct BGC Financial engaged in. (*Id.*) Plaintiffs further argue that all conditions for redemption of the Partnership Units have been met and Defendants' refusal to redeem the Partnership Units has been undertaken as retaliation for Plaintiffs' protected activities. (*Id.* ¶¶ 125-27).

Defendants raise a plethora of issues in their motion to dismiss, all of which are briefed. (D.I. 10, 13, 15). The only issues I am going to address, however, concern the viability of the Title VII claim.

3

Plaintiffs allege a Title VII violation for Retaliation in Count VI. For that count, there are three named Defendants – BGC Financial, BGC Holdings and BGC Partners. (D.I. 1 at 20). Defendants argue that the count is time barred and does not state a claim. (D.I. 9; *see* D.I. 10 at 12-16).

**The Statute of Limitations**

Count VI does not identify a particular date when the retaliation occurred. (D.I. 1 at 20-21). It does identify as a retaliatory act that Defendants "refused and failed to redeem the Partnership Units as required under the Partnership Agreement." (D.I. 1 at 20). It states that administrative remedies were sought with the New York State Division of Human Rights and the EEOC on October 15, 2019. (*Id.*).[2] Thus, the implication is that the retaliatory act happened within the 300 days preceding October 15, 2019. *See* 42 U.S.C. § 2000e-5e(1) (charge must be filed "within three hundred days after the alleged unlawful employment practice occurred").

In their brief, Plaintiffs argue that Count VI is timely, because: (1) Defendants have waived any objection to timeliness, because Defendants did not raise it in the FINRA arbitration; (2) the statute of limitations should be equitably tolled; and (3) a retaliation occurred on July 10, 2019 when Plaintiffs' "demand letters gave rise to an entirely new claim of retaliation." (D.I. 13 at 12-14; *see* D.I. 14-1, Exs. 11 & 12).

Plaintiffs' arguments do not hold up. I note that I consider a number of documents that

---

[2] Defendants attached the right to sue letters of the two administrative agencies. (D.I. 11-1, Exs. D, E, F, G). The right to sue letters state that the administrative complaints were untimely because they were "not filed within one year of the date of the most recent alleged discriminatory action by the Respondents. . . . [T]he only alleged adverse action cited in the complaint is Respondents' alleged failure to convert Complainant's alleged partnership units into shares. Respondents first denied [the] request . . . in 2014. . . . Although Complainant repeated her request, this would not extend the tolling of the statute of limitations." (*Id.*, Ex. E, at 164 of 177 (Goldstein)).
    Plaintiffs, in their response, attached the July 10, 2019 demand letter and the complaint filed with the administrative agencies. (D.I. 14-1, Exs. 11 & 12)

4

the parties have filed with their briefs. No party objects to this consideration, and I think the documents fall within the categories of documents that I can consider, namely, matters of public record and documents that form the basis of a claim. *See Lum v. Bank of America*, 361 F.3d 217, 221 n.3 (3d Cir. 2004).

Even assuming that failure to raise a statute of limitations defense at the FINRA Arbitration has some relevance to the timeliness of the present claim of retaliation, Defendants filed a copy of BGC Financial's Answer at the FINRA arbitration. (D.I. 14-1, Ex. 10). It did raise the statute of limitations. (*Id.* at 252 of 325 ("The Title VII Claim is Time Barred Against all Respondents")). Defendants BGC Holdings and BGC Partners were not parties to the FINRA proceeding. In support of the argument that the statute of limitations was waived, Plaintiffs cite to nothing (D.I. 13 at 13), although they do reference the FINRA award. But the FINRA award is in the record, and it states in the Case Summary, "Respondents . . . asserted various affirmative defenses." (D.I. 11-1, Ex. C at 149 of 177). Thus, the claim that the statute of limitations was waived is meritless.

Equitable tolling does not apply. Plaintiffs rely upon *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994), for the proposition that a statute of limitations may be equitably tolled "where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." (D.I. 13 at 14). *Oshiver* indeed summarizes equitable tolling as applying to three classes of cases: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum."[3] The first two classes are not applicable here. *Oshiver*

---

[3] The record is insufficient to decide whether Plaintiffs "mistakenly" asserted rights in the wrong "forum." For one thing, the record is unclear about what was "asserted" in the FINRA proceeding beyond what is asserted in the

5

described the third class as an "established situation." *Id.* at 1387 n.6. But the only relevant issues in *Oshiver* related to the first class of cases.

There are, I think, more relevant cases than *Oshiver*, which is the only case cited by either side. The Supreme Court has addressed the interrelationship of Title VII with other remedies, and consequently limited the applicability of tolling in connection with the time requirements of Title VII cases. In *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974), the Court noted: "In submitting [a] grievance to arbitration, an employee seeks to vindicate his contractual right under a collective bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress." *Id.* at 49-50. Subsequently, in *International Union of Elec. Workers v. Robbins & Myers*, 429 U.S. 229 (1976), the Court held that the arbitration process that followed from the initiation of the grievance procedures in the collective bargaining contract did not toll the time limits for filing an administrative Title VII claim. *Id.* at 236-40. The Supreme Court later characterized *Robbins* as, "we already have held that the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods." *Delaware State College v. Ricks*, 449 U.S. 250, 261 (1980). Thus, the time while Plaintiffs pursued their claims in the FINRA arbitration did not act to toll the time within which to file Title VII claims with the relevant administrative agency.

Whether the July 10, 2019 demand letter could generate a new opportunity for retaliation is also a lightly-briefed issue. Plaintiffs point out administrative agency determinations are not binding. (D.I. 13 at 14 n.8). But the demand letter does not provide for a plausible claim of

---

initial pleadings in that proceeding. For a second thing, the award states that BGC Holdings is not a FINRA registered entity. (D.I. 11-1, Ex. C, at 2 of 6). The award suggests not so much the wrong "forum" but rather seeking relief against a non-party.

6

retaliation. The supposed retaliation is that Defendants "failed to even respond." (D.I. 1, ¶¶ 57, 60). Defendants note that Plaintiffs plead that they "made their first conversion request in 2016." (*Id.* ¶ 46). Defendants refused the request then. (*Id.* ¶¶ 46, 52). Defendants argue that the retaliation claim thus existed in 2016, and the statute of limitations runs from then. Defendants essentially point out that it would make little sense to say that Plaintiffs could restart the limitations period by periodically making the same request over and over again. I agree with Defendants. The retaliation claim based on failure to redeem accrued in 2016.[4] The 2019 demand letter did not restart the statute of limitations.

Thus, the Title VII claim is barred by the statute of limitations.

**Failure to State a Claim**

The retaliation claim is based on a statute which provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by

---

[4] I note the striking similarity to a similar decision, albeit made in a much different context:

> The District Court dismissed Taylor's due process claim regarding the Board's reliance on the nature of his offense because he learned of that alleged injury when the Board denied parole in 2008 but did not file suit until over four years later after the Board again denied parole in 2012. That conclusion clearly is correct as to the Board's denial of parole in 2008. The District Court did not explain why that circumstance bars Taylor's challenges to the 2012 and 2014 denials of parole as well, but it does. The Board's reliance on the nature of Taylor's offense was apparent in 2008 when it expressly cited that factor in denying parole. Taylor thus knew everything he needed to know to assert his challenge at that time. The Board's "identically phrased" reliance on this factor again in 2012 and 2014 was not "a necessary factual predicate to [this] claim" because the Board's reliance on this factor in 2008 "would have been sufficient for [Taylor] to formulate his complaint." *Benchoff,* 404 F.3d at 818.
>
> Taylor argues that he could not have asserted this claim in 2008 because it is based on the Board's "continual" reliance on the nature of his offense and he could not have known that the Board would continue to rely on it until it did so again in 2012. As the Board observes, this argument assumes that it was permissible for the Board to rely on the nature of Taylor's offense once in 2008 but not thereafter. Taylor has cited no authority supporting such a proposition, and we are aware of none. The Board's continued reliance on this factor also does not make Taylor's claim timely under a continuing violation theory because Taylor was or should have been "aware of the [alleged] injury at the time it occurred" in 2008. *Montañez v. Sec'y Pa. Dep't of Corr.,* 773 F.3d 472, 481 (3d Cir.2014) (quotation marks omitted).

*Taylor v. Henderson,* 632 F. App'x 70, 73–74 (3d Cir. 2015)

7

> this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title.

42 U.S.C. § 2000e-3(a). The elements of a prima facie case of retaliation are:

> (1) that plaintiff engaged in protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.

*Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 193 (3d Cir. 2015).

Plaintiffs' employment terminated the second week of June 2015. (D.I. 1, ¶ 41; *see* D.I. 14-1 at 313-14 of 325). What is Plaintiffs' protected activity? It must be participating in the FINRA arbitration, which, since Plaintiffs were advancing discrimination and retaliation charges under Title VII (D.I. 14-1, Ex. 9, at 15), was "an investigation, proceeding, or hearing under this title." I do not think, based on the pleadings, that there is any allegation of any other protected activity after June 2015. Clearly, there was protected activity in the distant past (for example, Notices of Charge of Discrimination filed with the EEOC in 2012, *see* D.I. 14-1, Exs. 5, 6), and there are certainly allegations of opposing unlawful employment practices at other times during Plaintiffs' employment. But if there is any other protected activity after June 2015 other than the FINRA arbitration, Plaintiffs have not clearly alleged it.

What is the adverse action? It could be many things in the distant past, and it could be refusal to redeem the partnership interests in 2016, but there is nothing new subsequent to that.

What is the basis for plausibly finding that the adverse action is in response to the protected activity? As Plaintiffs allege, Defendants' position has not changed for many years; they were not going to redeem the partnership units. In the administrative agency complaint, Plaintiffs stated that the refusal to convert the partnership units was "undertaken in retaliation for Complainants' having prevailed against BGC Financial in the FINRA arbitration on their claims of hostile work environment and retaliation." (D.I. 14-1, Ex. 12, at 325 of 325). The problem

8

with that theory of retaliation is that the FINRA litigation had been going on since January 2015, and the refusal to redeem the partnership units occurred in 2016. The only new fact was that the FINRA panel issued a decision in 2019. Essentially for the same reasons that the claim is time barred, it is not a plausible claim.

As for BGC Financial, the demand letter was not sent to it. (D.I. 14-1, Ex. 11). It was sent to BGC Holdings and BGC Partners. Thus, the allegations do not plausibly allege that BGC Financial retaliated by doing nothing in response to a letter that was not sent to it.

BGC Holdings, L.P., was not a FINRA registered entity and therefore the FINRA arbitration did not address any issues in relation to that entity. (D.I. 11-1, Ex. C, at 2 of 6). BGC Financial took the position at the FINRA arbitration that any claims regarding deferred compensation had to be made against BGC Holdings. The FINRA arbitration panel therefore did not resolve any deferred compensation claims against BGC Holdings. (*Id.*). The FINRA panel awarded to Plaintiffs about $1,250,000 in total, of which $300,000 to each Plaintiff was for "retaliation." (*Id.* at 2-3 of 6; *see* D.I. 14-1, Ex. 12 at 324 of 325).

Title VII cases are against employers. Only one of the three Defendants was Plaintiffs' employer. (D.I. 14-1, Ex. 12 at 323 of 325 (Plaintiffs "were formerly employed as brokers by BGC Financial.")). Only one of the three Defendants was a defendant in the FINRA arbitration – BGC Financial. Only two of the three Defendants were named in the most recent administrative complaints – BGC Holdings and BGC Financial.

Only BGC Financial is alleged to be an employer in the Complaint. Are the other two Defendants employers? The Court of Appeals has stated that a party has a sufficient "employment relationship" to be an employer based "on the level of control the defendants exerted over the plaintiff: which entity paid the employees' salaries, hired and fired them, and

9

had control over their daily employment activities." *Covington v. Int'l Ass'n of Approved Basketball Offs.*, 710 F.3d 114, 119 (3d Cir. 2013) (cleaned up). Plaintiffs allege the various Defendants have overlapping employees and have actual authority to act for multiple Defendants. (D.I. 1 at 20; *see* D.I. 13 at 17). This does not make them all Plaintiffs' employer. The allegations in the complaint are insufficient to show an employment relationship with anyone other than BGC Financial.

Thus, were I not finding Count VI to be barred by the statute of limitations, I would nevertheless dismiss Count VI against BGC Financial, BGC Holdings and BGC Partners, for failure to state a claim, albeit with leave to amend.[5]

**Subject Matter Jurisdiction**

As I determine that the Title VII claim should be dismissed, and this is a poor case for the exercise of supplemental jurisdiction, I would decline to exercise supplemental jurisdiction if that were the only remaining basis for my exercise of jurisdiction. As noted though, Plaintiffs also allege diversity jurisdiction. Defendants allege that there is not complete diversity, but, at this point, that is simply an unproven allegation. (*See* D.I. 10 at 17 n.7). I have a duty to determine whether I have diversity jurisdiction, since, if I do, it would not matter that I would decline supplemental jurisdiction. Thus, I will permit limited jurisdictional discovery so that a record can be developed.

---

[5] I note that the result here does not strike me as harsh or unjust. The essence of Plaintiffs' claims is the breach of contract claim. Defendants do not dispute that there were contracts with certain terms. Defendants do raise various objections to the main breach of contract claim, including, in the motion to dismiss, briefing on the statute of limitations, issue and claim preclusion, the statute of frauds and the integration clause. I express no opinion on any of the defenses, but Plaintiffs' claim that their contractual rights have not been honored is the heart of their case.

10

**Conclusion**

The Title VII claim—Count VI—is **DISMISSED** with prejudice for being barred by the statute of limitations and **DISMISSED** without prejudice for failure to state a claim (1) for all named Defendants as to causation, and (2) for BGC Holdings and BGC Partners as to not being employers. The balance of the pending motion to dismiss (D.I. 9) is **DISMISSED** without prejudice to refiling should I determine that I do have diversity jurisdiction over the five state law claims.

The parties should meet-and-confer about jurisdictional discovery and submit a status report within two weeks.

IT IS SO ORDERED this 11th day of August 2021.

_____
United States District Judge